Our eighth case for this morning is William Lee v. City of Elkhart. I believe we will have a return of Mr. Grimes. Good morning again. Good morning again. It's still morning. You have ten more minutes or so. Yes. This is a case where we are contending that the plaintiff's FMLA application and approval was interfered with by the City of Elkhart. What reason is there to think he would have been better off with FMLA leave than he was with the administrative leave he was on until the city decided to terminate his employment? He would have had the statutory right to return to his job. Not why. The FMLA doesn't exempt you from discipline for unrelated issues. I understand that, but in answering your question, that was my answer to your question. Do any of the FMLA issues have any relevance if Officer Lee would have been terminated in any event for conduct on becoming an officer? In this particular case, yes. Here we have a factual situation where Officer Lee is on administrative leave, and during that period of administrative leave, some of which comes about as a result of his therapist recommending that he be off. During this period of time, the Chief was seeking to have Mr. Lee to retire, and he wouldn't retire because of his condition at that particular time. Could you incorporate in your discussion the misconduct incidents that the department relied on when it decided to terminate him, the Pizza Hut incident and the Cottrell? Sure. There are three of them, if I remember correctly. Our position is that Mr. Lee had been suffering from PTSD long before those incidents occurred, and that the city's or the police department's doctor had documented his PTSD. Forgive me, but are you talking about Dr. Mawwenni? Mawwenni. Because I'm going to ask you when you're done, and forgive me for interrupting you, to point us to a place in the record where he diagnosed him with PTSD. I'm sorry. No, I'm sorry. So you were explaining to me how, and I gather your explanation is that the incidents of sexual misconduct were somehow the result of PTSD, although I'm not sure where the evidence in the record is for that. But if that's your position, I at least would like to know that. Well, that's my position. Okay. Because Dr. Mawwenni was able to gauge the psychological or the emotional state of Mr. Lee from the very first, because he also approved him when he applied. And he was also aware of the shooting incidents that Officer Lee had been involved in. Right. But I guess I'm having a problem with the lack of focus, because it seems to me here we have a case where the city says, we had reason to dismiss him for cause based on these incidents of sexual misconduct. And there's an argument on the other side, apparently, that no, whether that was pretextual or what, I don't think it's right as a matter of law to say that the FMLA insulates you from dismissal for a completely unrelated charge. But we would need something in the record to show why they're related or why something else should have happened. And so I guess I'm needing a tighter organizational framework for your argument. I'm not saying that FMLA would excuse or prevent the city from taking the steps that it did. I'm not saying that. Okay. All right. What I am trying to say, and apparently not very well, is that the incidents that led to the filing of the charges, in our opinion, were related to the stressful incidents that had occurred. The shooting incidents in the light, yeah. And that Dr. Mulwiney initially diagnosed him with PTSD. Where? Yeah, where? I'm still trying to find that. Okay. Let me just take a second. I'm looking at his letter. I see Dr. Wade's diagnosis, but I don't see Dr. Mulwiney's. We discussed that starting on page 8. But where in the record? In the brief. Not in your brief. Document 68-1 is a July 27, 2010 letter from Dr. Mulwiney, and it does not say anything about PTSD. I understand that. So maybe there's something else I haven't found, but I don't know where it is. with regard to Dr. Mulwiney, starting on page 8. And there we go into the testing of Mr. Lee by Dr. Mulwiney. And when we go down and follow all of that, Dr. Mulwiney was concluding that Mr. Lee had PTSD based upon the test results. You don't even say that on page 8, much less? No, I'm talking about a continuation of the discussion. It starts on page 8. It starts on page 8 of the brief. And what I'm doing is taking you through the entire history, including Dr. Mulwiney, who makes the diagnosis early on. But where does he say this man has been? If you could help us with that. I certainly am trying to. I mean, look at page 11, for example. Paragraph 23, you have a summary of Dr. Mulwiney's diagnosis. And that's where it begins. That's where we're beginning to try and show you the picture, how it evolved over time, which included the various conduct that he was brought up before on charges before the board. And before he came up on charges before the board, or about the same time, he had gone to another therapist whose results were PTSD. And when you look back at what Dr. Mulwiney saw and tested for... All right, so you're drawing an inference, that's what he thought. He didn't actually say it, but you are drawing an inference that when you read it in context, that's what he must have meant. That's the best I can do for you. If you look at the AXIS-1, the clinical syndrome by Dr. Mulwiney, and you look at the same thing from... Are you talking about Hubbard? No, Mulwiney. And if you look at the diagnosis from the doctor that he ultimately went to, the last doctor that diagnosed him with PTSD, they are the same. Our position is that this was an injury that was ongoing at the time of the incidents that led to the charges against him. And then the idea was that the police department had access to the information from Dr. Mulwiney. Okay, well you're about to run out of time, if you want to save just a minute, or you can use it. I'll save. All right, thank you. Ms. Habeneth? Good morning. Good morning. One of the main things I wanted to start with was that a lot of what we've just talked about has to go to the termination and cause for the termination, whether it's PTSD, which led to these events that led to his termination. That's all been waived. He has not appealed his termination here at all. He doesn't bring it up in his brief. He doesn't mention any of that. So the only issues for the appeal are whether or not the city interfered with his FMLA rights and denied those rights, whether he was prejudiced by that interference and denial, and whether Flipson and Hubbard conspired to deprive him of the FMLA rights. If Officer Lee did, in fact, suffer from PTSD and that disorder was contributing to his allegedly inappropriate interactions with women, then would the city have some obligation to allow him leave to get help with the problem before terminating him? No. They could still terminate him per cause. And if they were required to give him leave, though, what they would be required under the FOP bargaining contract would be a six-month medical leave, and that would count against his FMLA entitlement. That's something he bargained for as a police officer. So really this FMLA is a red herring because he'd be given medical leave anyway for six months, which is, again, better than FMLA leave. In this case, even better than that, he was given administrative leave that was paid, so he'd still have that medical leave. If he had continued employment, he'd still have all of his medical leave, which would include the FMLA time. So is the city arguing somehow that he never adequately alerted it to the fact that what he really needed was medical leave? I can see administrative leave somehow has a different context than saying, I have an illness, I need to take time off to take care of it, to get myself back on track. So maybe that's where FMLA matters. Well, the issue with the FMLA leave request, and the city conceded this in depositions that it was misplaced, the form was misplaced. Right, yeah. But if you look at the form, again, going back to talking about Ma Winnie or Wade, neither one of them signed a certification form, only Hubbard did. And what Hubbard said was, he's stopped seeing me. He's told me he's going to go somewhere else, so I can't tell you at this time what his condition is. So even to get the medical leave, he didn't produce any evidence to show that he was entitled to a medical leave. And certainly that would be a contractual issue, which he hasn't raised here either. So, again, Ma Winnie and Wade are completely irrelevant to the FMLA situation. And I agree with your honors that, in which the district court correctly found, he was not prejudiced at all by any failure to give him FMLA leave because he was in a better position with a paid administrative leave. So up until his termination, he's on paid leave. That's right. It happens to be in the administrative category, not FMLA or disability or any other category you may have. Right. And I do want to correct Plaintiff's Counsel. He was not on that administrative leave because a doctor ordered him to be. He was on administrative leave because, according to the Elkhart Police Department's general rules, when they're investigating these allegations of sexual misconduct, that's what they're supposed to do is put him on paid administrative leave. So it was solely to investigate those allegations of misconduct in determining if he should be terminated, not because of a doctor. Again, was his administrative leave continuous for a period of time? Did it come up right after the Pizza Hut, or was it on and off? He was on administrative leave for that. That was two separate complaints. Actually, what happened was early on with the Pizza Hut complaint, they started investigating that, and they learned of this, I think it was the 7-11 complaint, which had been buried by his supervisor who was then demoted. So then he was on paid administrative leave that time. He was reinstated after that with, I think, unpaid, five days unpaid. Then he goes back on administrative leave paid when Jackie Cottrell comes forward and says that they engaged in sexual intercourse on the job. And that's continuous through his termination. The argument that he would have had a statutory right to return to his job, obviously, as your honors have mentioned, that's not correct. They have the right to terminate him for reasons unrelated to his leave. They would have terminated him anyway. The chief was clear about that. Regardless of what Dr. Hubbard said, he was going to terminate him anyway. The final part I'd like to point out that, again, he has waived any argument as far as wrongful termination. So it's established that they had, or at least it's not been disputed, that they had cause to terminate him unrelated to his leave. So he certainly would not have a statutory right to have his job back. And, finally, the final issue that he raises is conspiracy. He's raised absolutely no evidence of that, any conspiracy or meeting of the minds between Dr. Hubbard and Chief Flibsen. And I'll leave the rest of the time for my co-counsel. All right. Yes, Mr. Tyler. Mr. Grimes. Mr. Grimes. No, Mr. Tyler. Counsel, if it please the court, good morning. My name is Steven Tyler. I am here representing Dr. Hubbard, who is an appellee in this case, and I'm here simply to address the issue of the alleged conspiracy between the city and Dr. Hubbard to interfere with Officer Lee's FMLA rights, which was considered by the district court below and subject to its summary judgment order. And our position on this is quite clear. We believe that to the extent that Officer Lee has articulated the existence of that conspiracy as an issue for review in this case, he has, in fact, articulated no cogent argument to support that either in his brief or in his argument here today before the court and essentially has waived it. To the extent that that issue was considered by the district court below, we think the district court got it right. There is simply no evidence on the record, either direct or circumstantial in nature, which supports the claim or the reasonable inference that there was any kind of conspiracy between Dr. Hubbard and the city to interfere with Officer Lee's rights. There were only a limited number of communications between the city and Dr. Hubbard. There was one direct phone call with Chief Flipson. The evidence is that there was no discussion of his FMLA rights during that conversation. There was a letter. There was a certification. There was a clinical report. Essentially those things document that Dr. Hubbard was not treating Officer Lee for PTSD, he didn't think he had it, and that Officer Lee had self-referred to another health care provider to address those issues. So we think there's virtually no evidence to support that claim, and the district court's summary judgment order below should be affirmed in all respects. All right, thank you very much. Apparently there are no questions. So I'll give you a minute, Mr. Grimes. I'm not sure how much of it you have, but you have a minute to respond. Thank you. I've tried to demonstrate why we believe the fact that Mr. Lee had PTSD prior to these incidents that he was brought up on charges for, and that is that he had it. Our position is that the PTSD caused the problems that he was having on his job and that when we talk about the type of leave, as the court notes, he was not on medical leave at any time. He was on administrative leave because of the incidents. That he was seeing Dr. Hubbard. Dr. Hubbard never treated him. He never kept notes of their meetings. He never sought testing. He never referred him to anyone else. In fact, Dr. Hubbard went against what Dr. Malwani had said before he transferred Mr. Lee to Dr. Hubbard. He had laid out a regimen of treatment for Mr. Lee. Dr. Hubbard did none of those things. And so we see that as part of what we believe to have been a conspiracy on the part of the police department. Number one, by maintaining him on administrative leave, Dr. Hubbard not doing anything, even after he was told that he believed that he had PTSD, didn't do anything to help him, and during this period the time is running and it's giving the department time to take him before the board to terminate him. And so that's what we believe happened. Okay, you need to wrap up. Thank you. Okay, thank you so much. Thanks to all counsel. We'll take the case under advisement.